1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN HARDNEY,

11              Petitioner,            No. CIV S-06-0300 LKK EFB P

12        vs.

13   THOMAS CAREY, Warden, et al.,

14              Respondents.           <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16

17        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a prison disciplinary conviction

19   that resulted from a rules violation report issued against him on June 1, 2004, while he was

20   imprisoned at California State Prison, Solano.  Petitioner seeks relief on due process grounds,

21   claiming that (1) he was improperly denied an "investigative employee;" (2) he was improperly

22   deprived of information that would have enabled him to call relevant witnesses at his

23   disciplinary hearing; (3) the rules violation report did not contain an assessment of whether

24   petitioner's "paranoia, depression or other mental disorder" contributed to any misconduct; (4)

25   his conviction is not supported by sufficient evidence; and (5) the reporting officer's demands

26   that petitioner accept a cellmate without allowing him an opportunity to talk to the potential

1

cellmate in advance violates state regulations and created a safety risk to petitioner and the

institution.  Upon careful consideration of the record and the applicable law, the undersigned

recommends that petitioner's application for habeas corpus relief be denied.[1]

**I.      Background**

On June 1, 2004, Correctional Officer K. Stephens wrote a rules violation report charging

petitioner with "refusing a cell move" in violation of Cal. Code Regs. tit. 15, § 3005(b), a serious

Division F offense.[2]  Am. Answer, Ex. 3 at 2.[3]  Officer Stevens alleged that:

> On June 1, 2004, at approximately 1545 hours, I gave [petitioner] a
> direct order to take a cellmate based on his double cell status per
> ICC.  [Petitioner] was ordered to cell with an inmate he is
> compatible with per his present ASU status.  [Petitioner] refused
> that ordered [sic] when he stated, "I'm not refusing, but I don't
> know anyone in here I can live with."  I told [petitioner] that I had
> three or four different inmates he would be compatible with.
> [Petitioner] responded, "I can't live with them!"  [Petitioner's]
> refusal to double cell continues to contribute to Administrative
> Segregation's inability to maintain available bed space.  At the
> time of [petitioner's] refusal, there was only one bed available in
> ASU Building #10.  [Petitioner] is a participant in the Mental
> Health Services Delivery System at the CCCMS level of care.
> [Petitioner] is aware of this report.

*Id.*

---

[1]  Respondent requests the substitution of Charles Harrison, Warden of California State Prison, Los Angeles, as the correct respondent in this matter.  At the time of this request, petitioner was incarcerated at California State Prison, Los Angeles.  The court has independently verified that petitioner is currently held at Pelican Bay State Prison.  Accordingly, the court now substitutes in the correct respondent, the Warden of Pelican Bay State Prison.  *See Stanley v. California Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994) ("A petitioner for habeas corpus relief must name the state officer having custody of him or her as the respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254.

[2]  Cal. Code Regs. tit. 15, § 3005(b) provides as follows:

> (b) Obeying Orders.  Inmates and parolees must promptly and
> courteously obey written and verbal orders and instructions from
> department staff, and from employees of other agencies with
> authorized responsibility for the custody and supervision of
> inmates and parolees.

[3]  Page number citations herein are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1        The disciplinary hearing on the rules violation report commenced on July 23, 2004.  *Id.* at

2  4.  The hearing was not conducted within thirty days from the date petitioner was provided with

3  a copy of the rules violation report, in violation of prison regulations.  *Id.*  However, petitioner

4  "did not object to proceeding with the hearing."  *Id.*  Petitioner was advised of the charges

5  against him and the purpose of the hearing.  *Id.*

6        Although petitioner is a participant in the Mental Health Service Delivery System, he was

7  not referred for a mental health assessment prior to the disciplinary hearing because the rules

8  violation report did not describe evidence of "bizarre, unusual, or uncharacteristic behavior" at

9  the time of the charged incident.  *Id.*  Petitioner requested the services of an investigative

10  employee.  *Id.*  This request was denied because "the complexity of the issues does not require

11  further investigation" and "the housing status did not preclude [petitioner] from adequately

12  presenting a defense . . . ."  *Id.*  Petitioner waived the assistance of a staff assistant.  *Id.* at 5.

13        Petitioner pled not guilty to the charge against him, stating,

14             I simply said I will talk to whomever you want me to talk to.  He
             did mention he had some people in mind.  I told him I would talk
15             to them.  Yes, he did say he would talk to them for me, then he left.
             I told him I would still like to talk to them before they come into
16             the cell.  I can't just take someone on his word.  He can't
             determine if I can live with someone or them with me.  I just want
17             to talk to them.

18  *Id.* at 4.  Petitioner's request that Officer Stephens be called as a witness was granted.  *Id.*

19  Petitioner questioned Officer Stephens, as follows:

20             **Q-1)**  Do you recall the names of the inmates you had for me to
             house with?  **A-1)**  I do not recall all of them, I know it was cell
21             #212 and Williams in 120.  **Q-2)**  Didn't I say I'll talk to who ever
             you have?  **A-2)**  I don't recall you saying that.  **Q-3)**  Did you ask
22             if I wanted to talk to the guys that were compatible with me?  **A-3)**
             No, I didn't, I told you I would talk to them for you.

23

24  *Id.*  The hearing officer questioned Officer Stephens, as follows:

25             **Q-1)**  In your report you wrote [petitioner] stated, 'I'm not
             refusing, but I don't know anyone in here I can live with.'  Is that a
26             correct statement?  **A-1)**  I told [petitioner] I would talk to 212 or

3

1          120.  [Petitioner] stated I don't know if I can live with them.  **Q-2)**
Did [petitioner] offer anyone he could house with?  **A-2)**  No, he
2          did not.

*Id.*  The hearing officer asked petitioner whether he understood that once he was approved for a

double cell by the Classification Committee, he was "expected to keep a cellie" and that "it was

his responsibility to work with staff and find a cellmate."  *Id.* at 3.  Petitioner responded, "Yes,

guess [sic], I'm aware of that."  *Id.*

Petitioner was found guilty of the Division F offense of "refusing a cell move."  *Id.*  The

decision was based on the rules violation report and the evidence introduced at the disciplinary

hearing.  *Id.*  Because the hearing was not conducted within thirty days from petitioner's receipt

of the rules violation report, petitioner was not assessed a loss of time credits.  *Id.*  However, "all

other authorized disciplinary actions" were imposed.  *Id.*

On August 12, 2004, petitioner filed an administrative appeal of his disciplinary

conviction.  Am. Answer, Ex. 4 at 2.  The appeal was denied on November 12, 2004.  *Id.* at 3.

Petitioner subsequently filed a second level appeal, which was denied on November 12, 2004.

Am. Answer, Ex. 5.  Petitioner then filed an appeal at the district level, which was denied on

February 16, 2005.  Am. Answer, Ex. 6.

On May 10, 2005, petitioner challenged his disciplinary conviction in a petition for writ

of habeas corpus filed in the Solano Superior Court. Am. Answer, Ex. 7.  That petition was

denied on the basis that petitioner had failed to demonstrate he exhausted all available

administrative remedies.  *Id.*  Petitioner subsequently filed habeas petitions in the California

Court of Appeal and California Supreme Court.  Am. Answer, Exs. 8, 9.  Those petitions were

summarily denied.  *Id.*

**II.**    **Analysis**

    **A.  Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state

court proceedings unless the state court's adjudication of the claim:

4

1

2

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

4

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5   28 U.S.C. § 2254(d).

6   Under section 2254(d)(1), a state court decision is "contrary to" clearly established

7   United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

8   set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

9   indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

10   result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

11   (2000)).

12   Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

13   court may grant the writ if the state court identifies the correct governing legal principle from the

14   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

15   case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

16   that court concludes in its independent judgment that the relevant state-court decision applied

17   clearly established federal law erroneously or incorrectly.  Rather, that application must also be

18   unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

19   enough that a federal habeas court, in its independent review of the legal question, is left with a

20   'firm conviction' that the state court was 'erroneous.'")

21   The court looks to the last reasoned state court decision as the basis for the state court

22   judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

23   decision on the merits but provides no reasoning to support its conclusion, a federal

24   habeas court independently reviews the record to determine whether habeas corpus relief is

25   available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  When it

26   is clear that a state court has not reached the merits of a petitioner's claim, or, as in this case, has

1   denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a

2   federal habeas court must review the claim de novo. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th

3   Cir. 2003).

4   **B. Petitioner's Claims**

5         Petitioner claims that his disciplinary conviction resulted from several violations of state

6   law and violated his right to due process.  First, he claims that Officer Stephens' refusal to allow

7   him to interview potential cellmates jeopardized his "health and safety" and the "safety and

8   security of the institution," and was "contrary to the double-cell policy and procedures."  Pet. at

9   17.  Petitioner alleges that it has been "the procedure" to allow prospective cellmates to talk to

10  each other to determine compatibility before a cell move.  *Id.* at 14.  He states that a correctional

11  officer should have escorted him to interview potential cellmates.  *Id.*

12        Petitioner cites to several prison regulations involving the obligation of prison employees

13  to prevent disorder, enforce prison rules, and promote security.  *Id.* at 20.  He also attaches a

14  memorandum regarding "double-cell housing policy," which he interprets to mean that inmates

15  should be allowed to interview prospective cellmates prior to being placed in the same cell.  Pet.,

16  Ex. BB.  Petitioner states that he "did not refuse a cell move, he only request to be escorted to

17  the inmate or designated cell to meet the inmate prior to living with the perspective [sic]

18  cellmate."  Pet. at 21.  Petitioner states he made a "good faith" effort to work with Officer

19  Stephens.  *Id.* at 22.  However, Officer Stephens "deviated" from prison policy and failed to

20  work with petitioner to find a suitable cellmate.  *Id.* at 23.

21        Petitioner explains that inmates who are placed in administrative segregation (AdSeg) are

22  deemed a threat "to themselves, others, and the institution."  *Id.* at 17.  He states it is "a known

23  fact" that some inmates in AdSeg accept a cellmate after being pressured to do so by correctional

24  staff and then attack their cellmate in order to get a single cell.  *Id.* at 18.  He explains that this

25  was why he asked Officer Stephens to allow him to interview potential cellmates.  *Id.*  Petitioner

26  states he did not "believe Officer Stephens knew petitioner well enough to determine 'if another

6

1   inmate in AdSeg who has been deemed a threat to other inmates and staff could live with

2   petitioner without placing his health and safety at risk.'" *Id.* at 19.  Petitioner states he "was only

3   attempting to place some type of security on his health and safety by requesting to meet the other

4   inmate(s) before they move into his cell." *Id.* at 20.

5        Petitioner also complains that the rules violation report did not mention he was a

6   participant in the Mental Health Service Delivery System due to "symptoms of paranoia,

7   depression, and anxiety," nor did the report include an assessment of whether his mental health

8   problems "had any significance and/or contributed to the misconduct." *Id.* at 12-13.  Petitioner

9   argues that prison officials' failure to complete a mental health assessment prior to the

10   disciplinary hearing violated prison regulations and the dictates of *Coleman v. Wilson*, 912 F.

11   Supp. 1282 (E.D. Cal. 1995).  *Id.* at 28.

12        Petitioner further alleges that he was improperly denied the services of an investigative

13   employee at the disciplinary hearing, in violation of federal law and prison regulations.  *Id.* at 24.

14   He states that his placement in AdSeg "seriously disabled" his ability to "collect evidence on his

15   behalf." *Id.* at 25.  He explains that he had "absolutely no opportunity to collect information

16   and/or talk to witnesses." *Id.*  Petitioner states that he requested an investigative employee "to

17   determine 'who' were the 3 or 4 different inmates Officer Stephens referred to in his report that

18   he felt were compatible with petitioner, and have the investigator interview those inmates to

19   determine if Officer Stephens spoken with them and did they approve of moving with

20   petitioner." *Id.* at 11.  Petitioner also states the investigative employee could have ascertained

21   whether the prospective cellmates were compatible with him.  *Id.* at 27.

22        Petitioner argues that had he known the identity of his prospective cellmates prior to the

23   disciplinary hearing, he could have called them as witnesses to challenge Officer Stephens'

24   "arbitrary decision/theory that they were compatible and would have moved with petitioner

25   without meeting first and reaching an agreement." *Id.* at 27.  Petitioner explains that the first

26   time he found out who his possible cellmates were was during the hearing on the disciplinary

1   charge, but that it was too late to call these inmates as witnesses because they were no longer

2   housed in AdSeg. *Id.* at 12.  He alleges that he was deprived of "prior notice" of the names of

3   these inmates, which "depriv[ed] the petitioner an opportunity to call them as witnesses at the

4   hearing." *Id.*

5        Finally, petitioner argues that his conviction is not supported by the "preponderance of

6   evidence" introduced at the hearing. Pet. at 30.  Petitioner states that he did not "refuse a cellie"

7   and that Officer Stephens' rules violation report specifically reflects this.  *Id.* at 25-26.  He notes

8   that he told Officer Stephens he was not refusing to accept a cellmate.  *Id.* at 31.  Petitioner

9   argues that, on the contrary, Officer Stephens failed to work with him when he refused to allow

10  him to interview prospective cellmates.  *Id.*  Petitioner states he has never "refused a cellmate or

11  a cell move." *Id.* at 32.  He explains that he "had two other cellmates prior to the June 1st

12  incident, and in both cases he did in fact work with staff by being escorted to the prospective

13  inmates cell to discuss sharing a cell together." *Id.* at 13-14.  He argues, "the real issue and

14  disputed fact is Officer Stephens taking the position of match-maker, by placing a unknown

15  inmate to move in petitioner's cell that he believes is compatible with petitioner without

16  petitioner meeting the unknown inmate prior to moving in with him to confirm his compatibility

17  theory." *Id.* at 26.

18       In his prayer for relief, petitioner requests that the court "reverse the guilty findings of

19  the disciplinary charges," restore lost behavior credits, expunge all reference to the disciplinary

20  conviction from his record, and recalculate his classification score. *Id.* at 15.

21       **C. Habeas Corpus Jurisdiction**

22       Respondent argues that petitioner fails to state a cognizable claim in habeas corpus.  Am.

23  Answer, at 5.  He contends that because petitioner was not assessed a credit loss in connection

24  with his disciplinary conviction, he cannot establish that a favorable ruling on his habeas petition

25  is likely to accelerate his release from prison. *Id.* at 5-6.

26  ////

8

1        As described above, the documentation underlying petitioner's disciplinary conviction

2   reflects that petitioner was not assessed a loss of "worktime credits" because the disciplinary

3   hearing was held more than 30 days after petitioner received a copy of the rules violation report.[4]

4   The Director's Level decision on petitioner's administrative appeal states that "due to exceeded

5   time constraints for hearing the RVR, no credit forfeiture was assessed."  Am. Answer, Ex. 6.

6   Although petitioner requests that the court restore "lost . . . behavior credits to petitioner," there

7   is no evidence that petitioner lost behavior credits, or any time credits, as a result of his

8   disciplinary conviction.

9        Petitioner argues that the court has jurisdiction over his petition because the Board of

10  Parole Hearings could rely on his disciplinary conviction to find him unsuitable for parole.

11  Traverse at 10.  Respondent contends that any such claim is too speculative to support habeas

12  corpus jurisdiction.  Am. Answer at 2.

13       A writ of habeas corpus is the appropriate federal remedy when "a state prisoner is

14  challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a

15  determination that he is entitled to an immediate or speedier release from that imprisonment."

16  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Challenges to prison disciplinary convictions in

17  which the inmate has lost time credits must be raised in a federal habeas corpus action unless the

18  credits have been restored or the disciplinary conviction set aside.  *Edwards v. Balisok*, 520 U.S.

19  641 (1997).  Federal habeas corpus jurisdiction also exists when a prisoner seeks "expungement

20  of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's

21  eligibility for parole."  *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing *McCollum*

22  *v. Miller*, 695 F.2d 1044, 1047 (7th Cir. 1982)); *see also Docken v. Chase*, 393 F.3d 1024,

23  1028-29, 1031 (9th Cir. 2004) (challenging state parole board's refusal to provide petitioner with

24

25       [4] Cal. Code Regs. tit. 15, § 320(f)(3) provides that the institution is precluded from
     imposing a credit forfeiture as punishment for a rules violation if, among other things, the
     hearing is not held within thirty days of the inmate being provided a copy of the rules violation

26  report.

                                            9

1    annual review of his suitability for parole).

2          Expungement of a disciplinary finding is "likely" to accelerate a prisoner's eligibility for

3    parole when his claim has "a sufficient nexus to the length of imprisonment so as to implicate,

4    but not fall squarely within the 'core' challenges identified [in *Preiser* ]." *Docken*, 393 F.3d at

5    1031. An inmate's claim strikes at the core of habeas corpus when it "attack[s] the very duration

6    of [his] physical confinement itself" and seeks "immediate release or speedier release from that

7    confinement." *Preiser*, 411 U.S. at 487-88, 498. The Ninth Circuit has concluded that a

8    "sufficient nexus" exists, and therefore habeas jurisdiction, where a prison inmate "seek[s] only

9    equitable relief in challenging aspects of [his] parole review that . . . *could* potentially affect the

10   duration of [his] confinement." *Docken*, 393 F.3d at 1031 (emphasis in original). However,

11   "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a

12   prison condition will not necessarily shorten the prisoner's sentence." *Ramirez v. Galaza*, 334

13   F.3d 850, 859 (9th Cir. 2003). "The likelihood of the effect on the overall length of the

14   prisoner's sentence . . . determines the availability of habeas corpus." *Docken*, 393 F.3d at 1028

15   (quoting *Ramirez*, 334 F.3d at 858).

16          In this case, although expungement of petitioner's disciplinary conviction would not

17   "necessarily shorten [his] sentence," *Ramirez*, 34 F.3d at 859, it is "likely" to accelerate his

18   eligibility for parole, *Bostic*, 884 F.2d at 1269, and/or "*could* potentially affect the duration of his

19   confinement." *Docken*, 393 F.3d at 1031. It is clear that a disciplinary violation may affect the

20   duration of an inmate's confinement. Pursuant to Cal. Code Regs. tit. 15, § 2402(a), a prisoner

21   that "will pose an unreasonable risk of danger to society if released from prison" is not suitable

22   for release from prison, regardless of the amount of time served. In considering suitability, the

23   Board is required to consider "all relevant, reliable information available," including "behavior

24   before, during, and after the crime." *Id.*, § 2402(b). The circumstances tending to show

25   unsuitability include whether "[t]he prisoner has engaged in serious misconduct in prison or

26   jail." *Id.*, § 2402(c)(6). Likewise, institutional behavior is given additional consideration among

10

the circumstances tending to show suitability for parole because "[i]nstitutional activities

indicate an enhanced ability to function within the law upon release ." *Id.*, § 2402(d)(9).  The

unsuitability and suitability factors are "set forth as general guidelines" to be considered by the

parole board.  *Id.*, § 2402(c), (d).  The presence of a prison disciplinary conviction can therefore

diminish the chance that an inmate will be granted a parole date.  This court has reviewed

numerous transcripts from parole hearings at which California prison inmates have been denied

parole due, at least in part, to the presence of one or more prison disciplinary convictions, and

where inmates have been advised by Board panels to become or remain disciplinary free pending

their next parole hearing.

Petitioner's disciplinary violation is the type of relevant information that section 2402(b)

requires parole boards to consider because it reflects on petitioner's behavior "after the crime," it

is serious misconduct in prison or jail," and it is a possible indicator that petitioner is unable or

unwilling to comply with society's rules.  *Id.*  Expungement of petitioner's prison disciplinary

violation, if warranted, could affect the duration of his confinement by making it more likely that

he would be granted parole.  *See Murphy v. Department of Corrections and Rehabilitation*, No.

C 06-04956 MHP, 2008 WL 111226, at *7 (N.D. Cal. Jan. 9, 2008) (action seeking expungement

of serious disciplinary conviction cognizable on habeas review because expungement could

affect the duration of the petitioner's confinement by making it more likely that he would be

granted parole); *Drake v. Felker*, No. 2:07-cv-00577 (JKS), 2007 WL 4404432, at *2 (E.D. Cal.

Dec. 13, 2007 (claim seeking expungement of disciplinary conviction on grounds that it might

someday affect petitioner's parole eligibility cognizable on habeas review because "a negative

disciplinary finding, at least in California, necessarily affects potential eligibility for parole");

*Dutra v. Department of Corrections and Rehabilitation*, No. C 06-0323 MHP, 2007 WL

3306638, at *6 (N.D. Cal. Nov. 6, 2007) (claim seeking expungement of disciplinary conviction

cognizable on habeas review because "convictions secured for disciplinary violations in such a

proceeding may be a factor in an inmate's parole consideration hearing").

1    On the other hand, there is no evidence before the court that petitioner has ever received

2    a parole suitability hearing, that he is eligible for parole, or that he has been denied a parole date

3    on the basis of his prison disciplinary record.  In that sense, whether or not the presence of this

4    disciplinary conviction would affect his parole eligibility is somewhat speculative.  As noted by

5    respondent, the decision to grant or deny parole is based on a myriad of considerations.  *See*

6    *Sandin*, 515 U.S. at 487 ("The chance that a finding of misconduct will alter the balance [or a

7    parole suitability decision] is simply too attenuated to invoke the procedural guarantees of the

8    Due Process Clause"); *Ramirez*, 334 F.3d at 859 (successful challenge to a prison disciplinary

9    proceeding will not necessarily shorten the length of confinement because the Parole Board

10   could deny parole for other reasons); *Norman v. Salazar*, No. CV 08-8532-AHM (JEM), 2010

11   WL 2197541, at *2 (C.D. Cal. Jan. 26, 2010) ("the mere possibility that the 2006 disciplinary

12   conviction could be detrimental to Petitioner in future parole hearings is too speculative to serve

13   as the basis for a habeas corpus petition); *Santibanez v. Marshall*, No. CV 07- 00612- GEF

14   (MAN), 2009 WL 1873044 (C.D. Cal. June 30, 2009) (claim seeking expungement of

15   disciplinary conviction not cognizable on habeas review because it would have only speculative

16   impact on the petitioner's consideration for parole in the future, the petitioner had other prison

17   disciplinary convictions on his record as well, and he did not explicitly raise any concern that the

18   information may have an effect on his consideration for parole in the future).

19   After a careful review of the cases cited above, and based on this court's experience in

20   parole habeas cases, the undersigned concludes that petitioner has stated a claim cognizable on

21   habeas corpus.  Expungement of a disciplinary conviction from an inmate's record is likely to

22   accelerate his eligibility for parole and could potentially affect the duration of his confinement.

23   Accordingly, the court will address petitioner's claims on the merits.[5]

24

25   [5] Respondent does not argue that this action is moot.  A case becomes moot when "it no
     longer present[s] a case or controversy under Article III, § 2, of the Constitution."  *Spencer v.*
26   *Kemna*, 523 U.S. 1, 7 (1998).  In order to avoid mootness, the petitioner "must have suffered or

**D.  Applicable Law**

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least amount of due process along the prosecution continuum).  An inmate is entitled to advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken.  *See Wolff*, 418 U.S. at 563.  In the disciplinary hearing context, an inmate does not have a right to counsel, retained or appointed, although illiterate inmates are entitled to assistance.  *Id.* at 570.

An inmate has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  *Wolff*, 418 U.S. at 566.  *See also Ponte v. Real*, 471 U.S. 491, 495 (1985).  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence."  *Wolff*, 418 U.S. at 566.  Prison officials may, but are not required to, explain their reasons limiting an inmate's efforts to defend himself.  *Ponte*, 471 U.S. at 497.  As a general rule, inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison disciplinary hearings.  *Id.* at 510 (Marshall, J., dissenting).  *See also*

be threatened with, an injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).  If a party is no longer affected by a punishment, then there must be a "concrete and continuing injury other than the now-ended [punishment] . . . some 'collateral consequence' of the [punishment]," in order to avoid mootness.  *Id.*  There is no presumption of a "collateral consequence" in prison disciplinary proceedings.  *Wilson v. Terhune*, 319 F.3d 477, 481 (2003).  Nonetheless, a habeas petition is not subject to dismissal as moot if the petitioner can prove that actual collateral consequences are a likely result from a disciplinary action.  *Id.* at 481 & n.4.

1   *Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976).

2          The disciplinary hearing must be conducted by a person or body that is "sufficiently

3   impartial to satisfy the Due Process Clause."  *Wolff*, 418 U.S. at 571.  The decision rendered on a

4   disciplinary charge must be supported by "some evidence" in the record.  *Hill*, 472 U.S. at 455.

5   A finding of guilt cannot be "without support" or "arbitrary."  *Id.* at 457.  The "some evidence"

6   standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence

7   in the record that could support the conclusion reached by the fact finder.  *Powell v. Gomez*, 33

8   F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703,

9   705 (9th Cir. 1987)).  *See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990);

10  *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987).  Determining whether this standard is

11  satisfied does not require examination of the entire record, independent assessment of the

12  credibility of witnesses, or the weighing of evidence.  *Toussaint v. McCarthy*, 801 F.2d 1080,

13  1105 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472

14  (1995).  Indeed, in examining the record, a court is not to make its own assessment of the

15  credibility of witnesses or re-weigh the evidence.  *Hill*, 472 U.S. at 455.  The question is

16  whether there is any reliable evidence in the record that could support the decision reached.

17  *Toussaint*, 801 F.2d at 1105.

18          Where a protected liberty interest exists, the requirements imposed by the Due Process

19  Clause are "dependent upon the particular situation being examined."  *Hewitt v. Helms*, 459 U.S.

20  460, 472 (1983).  The process due is such procedural protection as may be "necessary to ensure

21  that the decision . . . is neither arbitrary nor erroneous."  *Washington v. Harper*, 494 U.S. 210,

22  228 (1990).  In identifying the safeguards required in the context of disciplinary proceedings,

23  courts must remember "the legitimate institutional needs of assuring the safety of inmates and

24  prisoners" and avoid "burdensome administrative requirements that might be susceptible to

25  manipulation."  *Hill*, 472 U.S. at 454-55.  The requirements of due process in the

26  prison context involve a balancing of inmate rights and institutional security concerns, with a

1  recognition that broad discretion must be accorded to prison officials.  *Wolff*, 418 U.S. at 560-63;

2  *see also Baxter*, 425 U.S. at 324.

3  **E.  Discussion**

4  **1.  <u>Denial of Investigative Employee</u>**

5         Petitioner claims that he was improperly denied the services of an investigative employee

6  at his disciplinary hearing.  He states that he wanted this employee to locate and interview his

7  potential cellmates to determine whether they would have been compatible with him and willing

8  to live with him.  As explained above, the record reflects that petitioner requested an

9  investigative employee but his request was denied because "the complexity of the issues does not

10  require further investigation" and "the housing status did not preclude [petitioner] from

11  adequately presenting a defense."  Am. Answer, Ex. 3 at 4.[6]

12         The central issue at petitioner's disciplinary hearing was whether he refused to obey an

13  order to accept a cellmate chosen by Officer Stephens.  Not at issue was whether petitioner

14  believed he was compatible with his prospective cellmates or whether he wanted to live with

---

15       [6]    Cal. Code Regs. tit. 15, § 3315(d)(1) provides as follows:

16

17      (d) An inmate shall be assigned an employee to assist in the investigation of matters pertaining to a disciplinary action when the chief disciplinary officer or designee determines the necessity

18  based on the following criteria.

19      (1) Investigative Employee.

20      (A) An investigative employee, as described in section 3318(a), shall be assigned when the staff designated to classify the serious

21  rule violation determines that:

22      1. The complexity of the issues require further investigation.

23      2. The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate

24  presentation of a defense.

25      3. A determination has been made that additional information is necessary for a fair hearing.

26

them or they with him.  Accordingly, petitioner's request for an investigative employee to interview potential cellmates for the purpose of determining compatibility was properly denied. Due process does not require the institution to provide petitioner with an investigative employee for the purpose of pursuing an irrelevant line of questioning.  Indeed, the institution has discretion to "limit access to other inmates to collect statements or to compile other documentary evidence" and is not required to explain its reasons for limiting an inmate's efforts to defend himself.  *Wolff*, 418 U.S. at 566; *Ponte*, 471 U.S. at 497-98.

The court also notes that petitioner has not demonstrated he was unable to conduct his defense without assistance.  He asked pertinent questions of Officer Stephens and gave his side of the story in a competent manner.  Accordingly, the denial of petitioner's request for an investigative employee did not prevent him from presenting his defense or violate his right to due process.

### 2.  Inability to Call Witnesses

Petitioner argues that he was deprived of the opportunity to call his potential cellmates as witnesses at the disciplinary hearing because he was not informed of their identity until the hearing was already underway.  However, as explained above, these witnesses would not have been able to provide information pertinent to whether petitioner refused a cell move.  Further, petitioner did not make a request to call his potential cellmates as witnesses.  He did not need to know their names before making this request.  Petitioner's right to due process was not violated by any failure to allow him to call inmate witnesses at his disciplinary hearing.

### 3.  Assessment of Petitioner's Mental Disorder

Petitioner argues that his right to due process was violated by the failure of prison authorities to assess his mental state prior to the disciplinary hearing and, particularly, to determine whether his history of mental health problems contributed to his refusal to accept a cellmate.  Petitioner states that he has undergone mental health treatment for "paranoia, depression and anxiety."  Pet. at 12-13.  He alleges that the failure of prison authorities to obtain

1    a mental health assessment violated Cal. Code Regs. tit. 15, § 3317.

2           Section 3317 provides:

3                  Inmates in the Mental Health program or any inmate showing
                   signs of possible mental illness may require a CDC 115 MH (Rev.
4                  06/06), Rules Violation Report: Mental Health Assessment.

5                  All inmates at the EOP, MHCB, and DMH level of care, who
                   receive a CDC 115, Rules Violation Report shall be referred for a
6                  Mental Health Assessment.

7                  All inmates in CCCMS or non-MHSDS inmates who receive a
                   CDC 115 Rules Violation Report, and who exhibit bizarre, unusual
8                  or uncharacteristic behavior at the time of the rules violation shall
                   be referred for a Mental Health Assessment.  An inmate shall be
9                  referred for a mental health evaluation prior to documenting
                   misbehavior on a CDC Form 115, Rules Violation Report, in any
10                 case where the inmate is suspected of self mutilation or attempted
                   suicide.  If the mental health evaluation determines that it was an
11                 actual suicide attempt, a CDC Form 115 shall not be written and
                   the behavior shall be documented on a CDC Form
12                 128B(Rev.4/74), General Chrono, for inclusion in the inmate's
                   central file.

13

14   The rules violation report reflects that at the time of the disciplinary hearing petitioner was a

15   participant in the Mental Health Service Delivery System "at the CCCMS level of care."  Am.

16   Answer, Ex. 3 at 4.  Pursuant to § 3317, he was entitled to a health assessment only if he

17   exhibited "bizarre, unusual or uncharacteristic behavior at the time of the rules violation."  There

18   is no evidence in the record that petitioner exhibited such behavior, or that any mental illness led

19   to the issuance of the rules violation report.  Accordingly, it does not appear that the institution

20   violated § 3317 when it failed to refer petitioner for a mental health assessment.

21          Petitioner also claims that the failure of prison authorities to obtain a mental health

22   assessment violated the ruling in *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995).  In

23   *Coleman*, the federal court issued orders requiring California to develop and implement remedial

24   plans to bring the California prison system's medical and mental health care into constitutional

25   compliance.  Petitioner has failed to demonstrate how the institution's failure to refer him for a

26   mental health assessment prior to his prison disciplinary hearing violated this decision.

                                                  17

1  Accordingly, he is not entitled to relief on this claim.

2        **4.  Sufficient Evidence**

3        Petitioner contends that his conviction on the disciplinary charge was not supported by

4  sufficient evidence.  As set forth above, due process requires that a disciplinary conviction be

5  supported by "some evidence" that is "reliable" and not "arbitrary."  *Hill*, 472 U.S. at 455, 457;

6  *Toussaint*, 801 F.2d at 1105.  Those standards were satisfied in this case.

7        Officer Stephens related in the rules violation report that petitioner refused a direct order

8  to accept a cellmate.  Specifically, petitioner stated that he didn't "know anyone in here I can

9  live with" and that he couldn't live with the three or four inmates suggested by Officer Stephens.

10 Am. Answer, Ex. 3 at 2.  At the disciplinary hearing, Officer Stephens testified that petitioner

11 told him he didn't know if he could live with two of the roommates suggested by Officer

12 Stephens, and he did not offer anyone else as a possible cellmate.  *Id.* at 4.  Petitioner testified at

13 the disciplinary hearing that he told Officer Stephens he wanted to talk to his potential cellmates

14 before they came into the cell; that he couldn't "just take someone on his word;" and that Officer

15 Stephens "can't determine if I can live with someone or them with me."  *Id.*  All of the above

16 constituted sufficient reliable evidence to support the charge against petitioner.  Although

17 petitioner stated that he was not refusing to accept a cellmate, the evidence reflects that he put

18 conditions on his acceptance that essentially constituted a refusal. The reasons why petitioner did

19 not want to comply with a legitimate order to accept a cellmate located by Officer Stephens do

20 not have any bearing on whether sufficient evidence supported the guilty verdict on the charge of

21 refusing a direct order.  Further, contrary to petitioner's conclusory allegations, there is no

22 evidence that refusing to allow inmates to choose their cellmates jeopardizes the safety and

23 security of the institution or any particular inmate.

24 ////

25 ////

26 ////

**III.  Conclusion**

Accordingly, for all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  March 31, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE